JS 6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6062 | **DATE** | 3/9/2001 |
| **CASE TITLE** | | Brown vs. Snyder et al | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Maurice Brown's petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 9 2001 date docketed | 14 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | 1S docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |

SCT

courtroom deputy's initials

FD-7
FILED FOR DOCKETING
01 MAR -9 PM 12: 00

Date/time received in central Clerk's Office

mailing deputy initials

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE E. BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 00 C 6062 |
| | ) | |
| DONALD N. SNYDER, JR., in his | ) | |
| official capacity as Director of the | ) | |
| Illinois Department of Corrections; | ) | |
| JOHN C. BATTLES, in his official | ) | |
| capacity as Warden of the Illinois River | ) | |
| Correctional Center; MICHAEL F. | ) | |
| SHEAHAN, in his official capacity as | ) | |
| Sheriff of Cook County, Illinois; and | ) | |
| ERNESTO VELASCO, in his official | ) | |
| capacity as Executive Director of the | ) | |
| Cook County, Illinois Department of | ) | |
| Corrections, | ) | |
| | ) | |
| Respondents. | ) | |

DOCKETED
MAR 9 2001

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

Maurice Brown was convicted of attempted first degree murder and aggravated

battery on November 20, 1996, after a bench trial, and sentenced to thirteen years in

prison. Brown appealed to the Illinois state appellate court, and then to the Illinois

Supreme Court, who denied him leave to appeal. Brown now files this petition for a

14

writ of habeas corpus under 28 U.S.C. § 2254. For the reasons set forth below, the Court declines to issue the writ.

## BACKGROUND

Maurice Brown was tried along with six co-defendants in the Circuit Court of Cook County, Illinois for the May 22, 1995 beating of Necomoshea Moore. All of the defendants and the victim were inmates at the Cook County Jail at the time of the incident. As a result of this beating, Moore was in a coma for eight weeks and was in the hospital until January of 1996.

The seven accused received a bench trial in front of Judge Henry Simmons in the fall of 1996. At trial, the state presented the testimony of Joseph Ippolito, another inmate at Cook County Jail at the time of the beating. Ippolito testified that on the day of the beating, he was in a cell with eight or nine other inmates, including the Petitioner, Maurice Brown. Someone came into the cell approximately fifteen minutes before the beating and said "Nick (identified as the victim, Necomoshea Moore) had tricked on one of his regents" and that he had to be "dealt with and radicated." Ippolito testified that this statement meant Moore had wronged a gang member, and was to be beaten in retaliation. Minutes later, from another cell in the Cook County Jail, Ippolito testified that he overheard a conversation between these same individuals. They discussed a plan to lure Moore into the cell. Ippolito testified that he saw the Petitioner

approach Moore and ask to talk to him. Moore then followed Petitioner into a cell, followed quickly by four other individuals with t-shirts pulled over their faces. Ippolito testified that he heard loud noises coming from the cell that sounded like someone hitting the walls or a person. Ippolito also testified that he heard Moore cry out that he "can't handle it."

The state also presented the testimony of Necomoshea Moore, the victim. Moore testified that he was approached by the Petitioner, who he identified as "Maurice," and followed him into the cell. Once he was in the cell, Moore testified that he was attacked by several men who hit him with socks filled with bars of soap. Moore spent eight weeks in a coma and was hospitalized for several months. Moore testified that while in the hospital, several months after the attack, he was shown photos of the seven defendants. Trial counsel for the petitioner moved to suppress Moore's identification of the defendants, claiming that the photographic array presented to Moore was impermissibly suggestive. The motion to suppress was denied.

The state also presented the testimony of four Cook County corrections officers. These guards testified to finding the beaten body of the victim, as well as a pair of bloody pants in the garbage, an inmate without pants, and other inmates with blood on their pants. Petitioner Brown was not named in any of this testimony.

The defense presented no witnesses after its motion to suppress was denied.

Judge Simmons found the Petitioner guilty of first degree attempted murder and aggravated battery on November 20, 1996. The Petitioner was sentenced to 13 years in the Illinois Department of Corrections. On appeal, the Illinois Appellate Court, First District, vacated the conviction for aggravated battery, since the prosecution had proved only one physical act. The Petitioner's application for leave to appeal to the Illinois Supreme Court was denied by mandate issued October 28, 1999. On October 3, 2000, the Petitioner filed this petition for a writ of habeas corpus.

## LEGAL STANDARD

A federal court may issue a writ of habeas corpus where the state court adjudication of a petitioner's claim resulted in a decision "contrary to, or resulted in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has stated that the "contrary to" and the "unreasonable application" clauses of § 2254(d)(1) have independent meaning. See Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In order for a court to grant the writ under the "contrary to" clause, a state court's decision must be "substantially different from relevant [Supreme Court] precedent." Id. at 405. This category is limited to the "narrow range of cases where the state court applied a rule that contradicts the

- 4 -

governing law as expounded by the Supreme Court or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000). A court will find a decision to be an "unreasonable application" of Supreme Court precedent when "the state court identifies the correct governing legal principle but unreasonably applies that principle to facts of the prisoner's case." Williams, 529 U.S. at 413. The Supreme Court has noted that "an *unreasonable* application of federal law is different than an *incorrect* application of federal law. Id. at 410. The test for unreasonableness is an objective one. Id.; Morgan v. Krenke, 232 F.3d 562, 565 (7th Cir. 2000).

## DISCUSSION

The Petitioner presents three arguments to this Court. He argues that: (1) the photographic array shown the victim was limited to the seven co-defendants and therefore impermissibly suggestive; (2) the state court did not have sufficient evidence to find Petitioner guilty beyond a reasonable doubt; and that (3) the state court did not have sufficient evidence to find that Petitioner acted with specific intent. This Court will address each argument in turn.

1.    Impermissibly suggestive photographic array

The Petitioner first challenges the photographic array presented to the victim as impermissibly suggestive. While the victim was in the hospital, prosecutors visited

him with pictures of the seven co-defendants. The state appellate court found that Moore was presented with two different photographic arrays. One array consisted of all 20-40 prisoners in the cell block. Record at A-141 (attached as Ex. D to Pet.'s Mem. of Law). The other array had between 7 and 15 pictures, and included all of the indicted defendants in this case. Record at A-164-66; see also Appellate Ct. Op. at 6 (attached as Ex. B to Pet.'s Mem. of Law). Petitioner now contends, as he did in state court, that the array was impermissibly suggestive, and the identification testimony of the victim should have been suppressed.

There are two steps to determining whether an identification procedure violated a defendant's rights. First, the procedure employed must be examined to see if it was unduly suggestive. United States v. Alanis, 109 F.3d 1239, 1242 (7th Cir. 1997). The defendant has the initial burden of proving that the procedure was unduly suggestive. United States v. L'Allier, 838 F.2d 234, 239 (7th Cir. 1988). If it is found to be suggestive, the totality of the circumstances is reviewed to see if the identification was nonetheless reliable. Alanis, 109 F.3d at 1242.

In order for the Petitioner to show that the photographic array was impermissibly suggestive, the defendant must show "a substantial likelihood that [the witness's] identification was based on an irreparable misidentification." L'Allier, 838 F.2d at 239. In the record before the Court, there are two competing stories. There appear to

be two arrays shown the victim, one with all 40-60 inmates pictures (Record at A141) and one with between 7 and 15 pictures (Record at A-159-60; A-164-66). The photographs are not included in the record for this court (or the state appellate court) to undertake an independent review. Appellate Ct. Op. at 6; see also Kubat v. Thieret, 867 F.2d 351, 357 (7th Cir. 1989) (holding that photographic lineup was proper "especially upon independent viewing of the challenged arrays"). The Petitioner has not met his burden and shown that the array was impermissibly suggestive.

Even if the Court were to find the array impermissibly suggestive, the Supreme Court has stated that "admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses certain aspects of reliability." Manson v. Brathwaite, 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). To that end, the Supreme Court has found five factors to be helpful in determining reliability. See Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). These factors are (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of crime; (3) the accuracy of the witness's pre-identification description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the length of time between the crime and the

identification. Cossel v. Miller, 229 F.3d 649, 655 citing, inter alia, Manson, 432 U.S. at 114; Biggers, 409 U.S. at 199-200.

The Court finds that there are sufficient indicia of reliability to support the admission of this identification. The Court takes particular note of the fact that the witness (Necomoshea Moore) had opportunity to view the defendant on a daily basis, since they were housed together in the Cook County Jail. The witness further had the opportunity to view the defendant immediately prior to the crime, when Brown approached Moore and asked Moore to follow him into the cell. The trial court had ample evidence to find that Moore was paying attention at the time of the crime, especially since he was the victim.

2. Insufficient evidence to find Petitioner guilty

A state court conviction that is not supported by sufficient evidence violates due process and merits habeas relief. Virginia v. Jackson, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This relief "is justified if no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Balfour v. Haws, 892 F.2d 556, 566 (7th Cir. 1989).

The Petitioner claims that the witnesses linking him with the beating, Joseph Ippolito and the victim Necomoshea Moore, were both of suspect credibility. The "insufficient evidence" standard is a very heavy burden for a defendant to carry. "The

burden becomes even heavier . . . where there is a claim of insufficient evidence because of the unreliability of one or more witnesses. Matters of witness credibility, absent 'extraordinary circumstances,' are solely for the jury to evaluate." <u>United States v. Muskovsky</u>, 863 F.2d 1319, 1322 (7th Cir. 1988). The Court finds that the Petitioner cannot make such a showing in this case. Moore's identification of the Petitioner as the man who lured him into the cell has already been found to be reliable. The credibility of the other witnesses, including Ippolito, was taken into consideration by the trial judge. Brown's habeas petition has not established any "extraordinary circumstances" to disturb the judge's findings. <u>See United States ex rel. Coates v. McVicar</u>, 2001 WL 58981 (N.D. Ill. Jan. 19, 2001).

3.      Insufficient evidence to find specific intent

As stated above, the Petitioner must carry a heavy burden to establish that the trier of fact acted without sufficient evidence. "In evaluating [Petitioner's] argument, we are bound to affirm the verdict if the evidence, when viewed in the light more favorable to the government, establishes that any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." <u>United States v. Leibowitz</u>, 857 F.2d 373, 380 (7th Cir. 1988) (citations omitted).

The Petitioner claims that evidence of specific intent to kill is absent from the state's case. The Court finds that the Petitioner has not met his burden here. The trial

court could have found that Petitioner intended to kill Moore from a number of pieces of evidence, including but not limited to, the testimony of Ippolito, who stated that the Petitioner was present when the plan to attack Moore was formulated.

## CONCLUSION

For the preceding reasons, Maurice Brown's Petition for Writ of Habeas Corpus is denied.

Charles P. Kocoras
United States District Judge

Dated: ___March 9, 2001___